J. M. Clarkston and Dora Clarkston v. Commissioner.
Clarkston v. Commissioner
Docket No. 61237.
United States Tax Court
T.C. Memo 1958-91; 1958 Tax Ct. Memo LEXIS 139; 17 T.C.M. (CCH) 446; T.C.M. (RIA) 58091; May 21, 1958
*139 Pleaz Wm. Mobley, Esq., Manchester, Ky., for the petitioners. John J. Larkin, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioners' income tax of $281.75 and $299.50 for 1952 and 1953, respectively. The issues to be resolved are whether respondent erroneously disallowed (1) deductions for a casualty loss in each year, (2) deductions for bad debts in each year, and (3) part of the claimed deduction for depreciation on tobacco barns for 1953. Findings of Fact Petitioners, husband and wife residing at Burning Springs, Kentucky, filed joint Federal income tax returns for 1952 and 1953 with the district director of internal revenue at Louisville, Kentucky. They owned and operated a general store and a tobacco farm during 1952 and 1953. During 1951, fire destroyed petitioners' house. Petitioners received insurance proceeds of $2,500 early in 1952, prior to filing their 1951 Federal income tax return. They claimed deductions for a casualty loss due to this fire of $500 in 1951, $1,000 in 1952 and $1,000 in 1953. Respondent disallowed the deductions for 1952 and 1953. During 1952 and *140 1953, petitioners extended credit to certain customers of their general store. They recorded the names of and amounts charged to those customers each day, and added the amounts to cash sales for that day. At the end of each of those years petitioners turned over to their attorney lists of uncollected accounts totaling $1,608.50 and $1,237.50 for 1952 and 1953, respectively. The attorney was unable to collect those accounts. On their returns petitioners claimed deductions for business bad debts of $700 and $600 for 1952 and 1953, respectively, which respondent disallowed. On their 1953 return, petitioners claimed a deduction for depreciation of frame tobacco barns as follows: Date
Remaining
Depreciation
acquired
cost
this year
1918
$1,000 $50
1921
500
25
1940
1,000
50
1952
800
40 For each barn, petitioners reported no depreciation allowed in prior years, a "life used" of 20 years, and an "estimated life" of 20 years. Respondent disallowed $75 of the aggregate depreciation deduction of $165 claimed. Opinion I. Petitioners correctly state that two basic facts are necessary to authorize deduction of a casualty loss: (1) The amount of the loss, *141 and (2) an identifiable event indicating the year of loss. . It is undisputed that destruction of petitioners' home by fire during 1951 marked the identifiable event. The amount of loss, however, is not shown. The only figures established by the evidence are the $2,500 fire insurance proceeds and the claimed deductions of $500, $1,000, and $1,000 on petitioners' returns for 1951, 1952 and 1953, respectively. 1951 is, of course, not in issue. The deduction for a casualty loss may not exceed cost, and in the case of depreciable non-business property may not exceed the amount of the loss actually sustained in the taxable year, measured by the then depreciated value of the property. [. Thus, two essential amounts must be ascertained. There is some evidence of the predestruction value of the structure. But there was no attempt, whatsoever, to show original cost. Petitioner, who presumably was in the best position to know, was not even questioned as to the cost of the property. The inference is clear, however, that it could not have exceeded the insurance proceeds. *142 If its value in 1951 was $5,000, as is suggested but not demonstrated by petitioner, the cost in 1919 when it was purchased was nowhere near that amount. We may take notice of general economic events and developments, see ; , aff'd (C.A. 4) ; , and the rise in the price level between 1919 and 1951 is notorious. A property which was worth $5,000 in 1951, and had been reasonably well maintained, could not well have cost more than $2,500 in 1919, even assuming normal depreciation in the meantime. Without some facts to indicate a different conclusion, we have no alternative but to sustain respondent's disallowances of deductions for a casualty loss in each of the years 1952 and 1953 for failure of proof. ; . II. Respondent also disallowed deductions in each year for bad debts allegedly incurred in petitioners' general store business. Respondent cites two grounds for the disallowance: (1) The *143 amounts claimed had never been included in income, and (2) that, even if properly taken into income, worthlessness has not been proved. We view the record as requiring findings which refute respondent's position on both grounds. Citing neither authority nor record, respondent asserts that petitioners employed the cash receipts and disbursements method of accounting. The inclusion by petitioners of inventories in their reports of operations of their store business implies the use of an accrual method. See , certiorari denied , affirming a Memorandum Opinion of this Court. Taxpayers on an accrual method must include credit sales in income when the sales occur. . The unchallenged testimony of petitioner J. M. Clarkston establishes that he did include the credit transactions as sales for those days when they occurred: "Q. Well, supposing I came in, did come in in 1952, and purchased $10 worth of goods out of your store, and I didn't pay you right then? "A. Well, I put it on a little slip and hang it up there, and if you don't pay me *144 in so long I take it down and put it in on record so I won't forget it "Q. Well, did you list that amount for that day as sold? "A. Yes. "Q. The person that got the goods from you, you marked it down on this ledger as sold that day? "A. Yes. * * *
"Q. And this amount of $700 that you claimed on your return had been put on your ledger as take-in, or as sold? "A. Yes. "Q. At the time that they were sold; is that correct? "A. Yes, sir. * * *
"Q. Mr. Clarkston, did you keep the same kind of records for 1953 in the store, as you did for 1952? "A. Yes, sir. "Q. You kept your purchases, your sales, and your credit in the same manner? "A. Yes." The record likewise shows that the uncollected accounts at the end of each year were worthless. Not only did petitioners charge off those accounts, as respondent in effect concedes, and determine that they were worthless, but the attorney to whom they submitted those accounts each year for collection found that he "was unable to collect." Accordingly, we disapprove respondent's disallowance of the deductions taken for bad debts in each year. III. Respondent disallowed petitioners' claimed deduction in 1953 for depreciation *145 of barns in excess of $90. On their return, petitioners listed four barns on each of which they took depreciation in varying amounts, the total aggregating $165. As to this deduction, petitioners must prove basis, useful life, and depreciation allowed or allowable in prior years. ; . The only relevant [1] evidence presented is the tax return which indicates some deduction for depreciation should be allowed. As respondent has allowed a portion of the claimed deduction and petitioners have presented no evidence upon which we can base a greater allowance, we approve respondent's determination as to depreciation of barns in 1953. See ; cf. . Decision will be entered under Rule 50. Footnotes
1. Petitioner J. M. Clarkston did testify as to two barns built in 1946 and 1947, respectively, but depreciation on neither was claimed on the return, and no explanation was offered.↩